ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA 2006 MAY 26 AM 8: 17

AUGUSTA DIVISION

CLERK_____
SO. DIST. OF GA.

| | |
|---|---|
| FELICIA LASHON GRANT, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CV 105-001 |
| ) | (Formerly CR 103-064-3) |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The captioned case comes before the Court on Petitioner's motion to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255. For the reasons stated below, the Court **REPORTS** and **RECOMMENDS** that the motion be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the United States of America ("the Government").

I. **BACKGROUND**

A. **Procedural History**

On January 9, 2004, Petitioner pled guilty to one count of conspiracy to produce false identification documents (in violation of 18 U.S.C. § 371) and one count of producing a fraudulent identification document (in violation of 18 U.S.C. § 1028). CR 103-064, doc. nos. 71-73. Petitioner, a former employee of the Georgia Department of Motor Vehicles, had participated in a scheme to produce fraudulent driver's licenses and then sell them to illegal aliens. Id., doc. nos. 16 & 72. Petitioner was represented by her retained counsel, Mr. Martin C. Puetz. On April 15, 2004, the Honorable Dudley H. Bowen, Jr., United States

District Judge, conducted a sentencing hearing and sentenced Petitioner to 36 months of imprisonment as to each count, to be served concurrently. Judge Bowen entered judgment on April 23, 2004. Id., doc. no. 97. Petitioner did not file a direct appeal, but filed the instant timely § 2255 motion on January 3, 2005. Id., doc. no. 126.

**B.     Issues Raised**

Petitioner contends: 1) she should have been given a "downward departure" from the sentence called for by the Federal Sentencing Guidelines ("Guidelines") because of her cooperation with the Government, and Mr. Puetz should have argued as much; 2) Mr. Puetz "didn't ask [her] nor did he attempt to file an appeal;" and 3) her sentence enhancements are unconstitutional under Blakely v. Washington, 542 U.S. 296 (2004). Id., doc. no. 126, p. 4. The Court held an evidentiary hearing to resolve "whether Petitioner instructed [Mr. Puetz] to file an appeal."[1] Id., doc. no. 146, p. 1.

**C.     Factual Background**

A United States Probation Officer ("Probation Officer") prepared a Presentence Report ("PSI") prior to Petitioner's sentencing. The Probation Officer determined that Petitioner's base offense level was 11 based on her violation of 18 U.S.C . § 1028(a). PSI ¶22. Because Petitioner's offense involved the production of at least 51 fraudulent documents, the Probation Officer applied a six-level increase to the base offense level pursuant to U.S.S.G. § 2L2.1(b)(2). Id. ¶23. The Probation Officer also applied a two-level enhancement pursuant to U.S.S.G. § 3B1.3 based on Petitioner's abuse of a position of public trust. Id. ¶25. The Probation Officer next applied a three-level reduction to

---

[1] The Court appointed Mr. Glenn Scott Buff for the limited purpose of representing Petitioner at the hearing. Id.

2

Petitioner's offense level pursuant to U.S.S.G. § 3E1.1 for acceptance of responsibility. Id. ¶28. The resulting total offense level was 16, criminal history category I, with an applicable Guideline sentence range of 21 to 27 months of imprisonment.

The Probation Officer also noted that an upward departure under U.S.S.G. § 5K2.0 "may be warranted"[2] because "[t]he Guidelines in this case failed to address the financial gain of the defendant . . . as a result of payments from the illegal aliens who purchased fraudulent licenses."[3] Id. ¶ 64. In this regard, the Probation Officer noted:

> [P]ecuniary gain is not addressed in the provisions of U.S.S.G. § 2L2.1. However, the provisions found in U.S.S.G. § 2B1.1 do address economic gains from fraudulent activities. Pursuant to U.S.S.G. § 2B1.1(b)(1)(D), fraudulent offenses resulting in a pecuniary gain of more than $30,000 but less than $70,000 call for a six-level increase in the offense level. This six-level increase represents a potential means for a guided upward departure in this case.

Id.

Of note, the Government filed a U.S.S.G. § 5K1.1 motion on Petitioner's behalf in recognition of her substantial assistance.[4] CR 103-064, doc. no. 87. The Government also filed a separate motion "to reduce [Petitioner's] offense level by one additional level pursuant to U.S.S.G. § 3E1.1(b)." Id., doc. no. 94, p. 1. The Government presented testimony from an agent in support of its § 5K1.1 motion, and Mr. Puetz made extensive arguments in support of a downward departure at sentencing. Sentencing Tr., pp. 33-44. Mr. Puetz also specifically objected to ¶ 64 of the PSI and argued against any upward departure.

---

[2]Perhaps noteworthy, the Probation Officer did not actually recommend an upward departure, instead recommending a sentence within the applicable Guideline range.

[3]Petitioner "received a minimum total pecuniary gain of approximately $45,000." PSI ¶64.

[4]Upon being confronted by law enforcement officials, Petitioner admitted her guilt and agreed to participate in a successful sting operation against her coconspirators. Sentencing Tr., p. 34.

Id. at 27, 29-30.

Notwithstanding the arguments raised by the Government and Mr. Puetz on Petitioner's behalf, Judge Bowen denied the Government's § 5K1.1 motion and upwardly departed to the aforementioned 36-month sentence. Id. at 52-55. In support thereof, Judge Bowen stated, "It is my view that the Sentencing Commission did not adequately take into consideration the nefarious nature of a scheme such as this to produce, for a significant monetary gain, false driver's licenses to people who obviously were illegal aliens." Id. at 53. He also specifically informed Petitioner of her right to appeal based on the upward departure. Id. at 56. Nevertheless, Petitioner did not file a direct appeal.

At the evidentiary hearing, Petitioner testified that during a discussion with Mr. Puetz during the week prior to her sentencing, she instructed him to file a notice of appeal if Judge Bowen decided to upwardly depart from the Guideline sentencing range. According to Petitioner, Mr. Puetz agreed to file a notice of appeal in that event. Petitioner acknowledged that she did not actually instruct Mr. Puetz to file an appeal at sentencing or at any time thereafter, whether in person, via telephone, or in a letter. In short, according to Petitioner, she had no contact with Mr. Puetz following the oral imposition of her sentence.

Interestingly, according to Petitioner, she wanted to tell Mr. Puetz to file an appeal following Judge Bowen's oral pronouncement of sentence, but she did not have a chance to do so. Petitioner testified that when she was remanded to custody, the United States Marshal whisked her away from the courtroom before she could speak to Mr. Puetz.[5] However,

---

[5] Of note, Mr. Puetz offered the contrary testimony that he and Petitioner were in the courtroom together for several minutes following the imposition of sentence, but that Petitioner did not take this opportunity to instruct him to file an appeal.

4

Petitioner stated that her family repeatedly attempted to contact Mr. Puetz in reference to filing an appeal on her behalf. Petitioner could not provide when these alleged communications between her family members and Mr. Puetz took place. Petitioner also explained that, more than a month after she found out that Mr. Puetz had not filed a notice of appeal, she and her family sought to retain another attorney, Mr. Ronald Garnett,[6] to pursue a direct appeal of her case.

In contrast, Mr. Puetz testified that, although he did inform Petitioner of her right to appeal in the event of an upward departure, she never expressed any interest in pursuing an appeal. Mr. Puetz also stated that, had Petitioner or her family directed him to file an appeal before the time in which to do so expired, he would certainly have done so. Interestingly, Mr. Puetz did acknowledge that he was contacted by one of Petitioner's family members, but noted that this communication occurred well after the time to file an appeal had expired. That said, Mr. Puetz admitted that, following the imposition of sentence, he never contacted Petitioner or asked her whether she wanted to file an appeal.

Mr. Puetz also recalled that Mr. Garnett called his office and asked to see a copy of Petitioner's PSI, although he was not sure when. In a letter dated July 15, 2004, Mr. Puetz informed Mr. Garnett that he did not feel comfortable turning over the confidential PSI to Mr. Garnett. Mr. Puetz could not recall any further details regarding Mr. Garnett.

In rebuttal, Petitioner called her aunt, Ms. Katrina Archer Bentley, as a witness. Ms. Bentley offered the remarkable testimony that, within 48 hours of her sentencing, Petitioner was transported to the Federal Prison Camp in Marianna, Florida. As a result, Petitioner was

---

[6]It should be noted that Mr. Garnett was disbarred from the practice of law by the Supreme Court of Georgia on September 27, 2004. In re Garnett, 278 Ga. 527, 603 S.E.2d 281 (2004) (*per curiam*).

5

purportedly unable to communicate with Mr. Puetz. Instead, Ms. Bentley allegedly began taking immediate action on Petitioner's behalf. Ms. Bentley allegedly made several phone calls and even made two personal visits to Mr. Puetz's office on Petitioner's behalf. Ms. Bentley maintains that she took those actions before the ten-day period in which to appeal had expired. Of note, Ms. Bentley also offered that her first visit to Mr. Puetz's office allegedly occurred one week after Petitioner was "incarcerated." According to Ms. Bentley, Mr. Puetz told her that he would not file a notice of appeal because Petitioner had not paid him for his representation.

Frustrated by Mr. Puetz's alleged refusal to represent Petitioner on appeal, Ms. Bentley then retained Mr. Garnett. According to Ms. Bentley, she asked Mr. Garnett to file an appeal before the ten-day period in which to appeal had expired. Nevertheless, Mr. Garnett took no action on Petitioner's case. Ms. Bentley later learned that Mr. Garnett had been disbarred. See footnote 6, *supra*.

Having set forth the relevant background and the factual contentions at issue, the Court resolves the matter as follows.

## II.   DISCUSSION

### A.   Ineffective Assistance of Counsel

#### 1.   Lost Right to Appeal

Petitioner's skeletal § 2255 motion alleges only that Mr. Puetz "didn't ask [her] nor did he attempt to file an appeal." CR 103-064, doc. no. 126, p. 4. The motion does not mention Mr. Garnett, nor explicitly state that Mr. Puetz ignored her instructions to file a notice of appeal. Nevertheless, as Petitioner filed her § 2255 motion *pro se*, the Court

construes her motion liberally, see Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), to state two claims: 1) that Mr. Puetz unreasonably failed to consult with Petitioner regarding whether to appeal, and 2) that Mr. Puetz failed to file a notice of appeal despite explicit instructions from Petitioner. Before addressing these claims, the Court will explain the applicable principles of law.

First, cases in which a criminal defendant explicitly instructs her attorney to file a notice of appeal are subject to a bright-line rule. "[A]n attorney's failure to file an appeal after the defendant requests him to do so entitles the defendant to an out-of-time appeal, even without a showing that there would have been any viable grounds for an appeal." Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995) (*per curiam*); see also Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). Thus, if the Court determines that Mr. Puetz failed to honor a request to file a notice of appeal, it must grant Petitioner's § 2255 motion on that score.

On the other hand, the issue of defense counsel's duty to consult with his client regarding an appeal is not subject to a *per se* rule. If the Court determines that Mr. Puetz failed to consult with Petitioner regarding an appeal, it must assess whether such failure: 1) was professionally unreasonable, and 2) resulted in prejudice to Petitioner. Flores-Ortega, 528 U.S. at 478-79 (citing Strickland v. Washington, 466 U.S. 668, 688 (1984)). Defense counsel does not have an absolute duty "to discuss the possibility of an appeal with the defendant, ascertain [her] wishes, and act accordingly" in every case. Id. at 478. Of particular note, the Supreme Court has explained that there is no duty to consult where the "sentencing court's instructions to a defendant about [her] appeal rights in a particular case

7

are so clear and informative as to substitute for counsel's duty to consult." Id. at 479-80. Furthermore, it is not professionally unreasonable for counsel to neglect to consult with the defendant about an appeal when "the defendant does not express any interest in appealing, and counsel concludes that there are no nonfrivolous grounds for appeal." Id. at 479.

If it can be shown that defense counsel unreasonably failed to consult with his client regarding an appeal, this does not resolve the issue. The Court must then consider whether any actual prejudice has resulted. In this regard, Petitioner must "demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with [her] about an appeal, [she] would have timely appealed." Id. at 484. Simply put, a defendant who is fully aware of her right to appeal, but chooses not to, cannot later complain that her counsel was ineffective for failing to consult with her regarding an appeal. Id.

Having set forth the applicable rules of law, the Court resolves Petitioner's claims regarding her lost right to appeal. The threshold issue here is credibility. Is the Court to believe Mr. Puetz or the self-serving allegations of Petitioner and her aunt, Ms. Bentley? Generally, when the testimony conflicts, the Court, as fact finder and "ultimate judge of the credibility and demeanor of witnesses," must believe one witness over the other. McCoy v. Newsome, 953 F.2d 1252, 1262 (11th Cir. 1992) (*per curiam*). More specifically, the determination of the credibility of a testifying attorney during an evidentiary hearing on a claim of ineffective assistance of counsel is a matter within the Court's good discretion. See Carr v. Schofield, 364 F.3d 1246, 1264-65 (11th Cir.), *cert. denied*, 543 U.S. 1037 (2004).

Here, the Court specifically credits the testimony of Mr. Puetz over that of Petitioner and Ms. Bentley. Mr. Puetz, who has practiced as a criminal defense attorney for twenty-

8

eight years, is well-known to the Court. He has demonstrated himself to be an ethical, able, and zealous advocate for his clients. The Court finds any notion that Mr. Puetz would ignore Petitioner's express wishes and then lie to this Court about his communications with Petitioner or her family incredible. Simply put, any attempt by Petitioner to besmirch Mr. Puetz's character fails.

At the evidentiary hearing, Mr. Puetz maintained quite adamantly that Petitioner never instructed him to file an appeal or even expressed any interest in appealing. Mr. Puetz also testified that Petitioner was well aware of her right to appeal and had ample opportunity to request him to file a notice of appeal before the time in which to appeal expired. Mr. Puetz did provide that he had one interaction with one of Petitioner's family members, but that this conversation occurred well after the time to appeal had expired. According to Mr. Puetz, sometime after his interaction with this family member, he was contacted by Mr. Garnett. Based on Mr. Puetz's testimony, the Court **FINDS**: 1) Petitioner never asked Mr. Puetz to file a notice of appeal, and 2) well after the ten-day period of file a notice of appeal under Fed. R. App. P. 4(b)(1) had expired, relatives of Petitioner contacted Mr. Puetz and then Mr. Garnett about an appeal.

In making these findings, the Court should note a few obvious problems with the testimony offered to contradict Mr. Puetz's version of the events. First, Petitioner's contention that she was spirited out of the courtroom at sentencing before she could instruct Mr. Puetz to file a notice of appeal is unbelievable. The suggestion that Judge Bowen or the United States Marshal would act to prevent a criminal defendant from discussing her desire to file an appeal with her attorney is simply not credible. Regardless, Petitioner's averment

9

regarding her immediate remand to the custody of the Marshal does not explain her admitted failure to contact Mr. Puetz at any time after her sentencing. It would have been a simple matter to write Mr. Puetz a letter expressing her wishes. Instead, there is a convenient lack of evidence regarding whether Petitioner or her family ever contacted Mr. Puetz (or Mr. Garnett) regarding Petitioner's alleged desire to appeal before the period for filing a notice of appeal had elapsed.

Next, there is the fact that Petitioner's and Ms. Bentley's testimony regarding when the family sought the services of Mr. Garnett are plainly contradictory. Ms. Bentley avers that she contacted Mr. Garnett before the period in which to appeal expired. In contrast, Petitioner provided that her family contacted Mr. Garnett more than a month after the family reportedly learned that Mr. Puetz would not file an appeal. Of course, Mr. Puetz's alleged July 15, 2004 letter to Mr. Garnett supports the Court's conclusion that Ms. Bentley did not contact Mr. Garnett until well after the period to file an appeal had expired.

Furthermore, Ms. Bentley's dubious contention that Petitioner was transported to Marianna, Florida within 48 hours of her sentencing casts doubt upon Ms. Bentley's entire testimony. In fact, as the attached records from the United States Marshal indicate, Petitioner was not turned over to the custody of the Bureau of Prisons and transported to the Federal Prison Camp in Marianna, Florida until May 21, 2004--well after the time to file an appeal had expired. See Attach. A. Accordingly, Petitioner's and Ms. Bentley's assertion that Petitioner could not get in touch with Mr. Puetz because she was incarcerated in Florida rings hollow. In sum, Petitioner's and Ms. Bentley's self-serving testimony is simply not credible.

Having dispensed with Petitioner's claim that Mr. Puetz ignored an explicit request

10

to file an appeal, the Court must address whether Mr. Puetz unreasonably failed to consult with Petitioner regarding whether she wanted to appeal. Mr. Puetz admits that he did not consult with Petitioner about an appeal following her sentencing.

Nevertheless, both Mr. Puetz and Petitioner agree that he informed her of her right to appeal in the event of an upward departure and that Judge Bowen specifically informed Petitioner of her appeal rights at sentencing. At the evidentiary hearing, Mr. Puetz contended that, despite being fully aware of her rights, Petitioner never expressed any interest in an appeal. Given these facts, the Court does not find that Mr. Puetz acted unreasonably in failing to contact Petitioner to ascertain whether she wished to appeal her sentence. In addition, as will be discussed in greater detail *infra*, Petitioner has not identified the existence of any non-frivolous issue which should have prompted Mr. Puetz to ask Petitioner if she wanted to appeal. Given these facts, the Court cannot conclude that Mr. Puetz's actions were objectively unreasonable.

Regardless, it is apparent that Petitioner was aware of her right to appeal and could have contacted Mr. Puetz and requested him to file a notice of appeal if she had desired to do so. Consequently, even assuming *arguendo* that Mr. Puetz's performance was deficient, Petitioner has not shown that Mr. Puetz's failure to consult with her about an appeal resulted in any actual prejudice. Given these facts, Petitioner has not shown a reasonable probability that, but for Mr. Puetz's failure to consult with her, she would have timely appealed her sentence.

Of course, there remains the fact that Petitioner's family asked Mr. Puetz and Mr. Garnett to pursue an appeal on Petitioner's behalf. Nevertheless, crediting Mr. Puetz's

11

testimony, it is clear that Petitioner's relatives, including Ms. Bentley, took no action until after the time to appeal had expired. Ms. Bentley's self-serving contention that she made a flurry of phone calls and two visits to Mr. Puetz's office (upon traveling down to Augusta from her home in Stone Mountain, Georgia) before the ten-day period to appeal elapsed simply cannot be taken at face value. Similarly, the Court finds it unlikely that Ms. Bentley contacted Mr. Garnett during the ten-day period.

Because Petitioner and her family waited until some time after the period to file an appeal had expired to take any action, Petitioner's ineffective assistance of counsel claims must fail. Contacting Mr. Puetz and Mr. Garnett about an appeal after the time in which to appeal had elapsed did not revive Petitioner's right to appeal. Simply put, Petitioner and her family decided too late that she wanted to appeal, and no relief is warranted.

### 2. Mr. Puetz's Performance at Sentencing

Next, the Court addresses Petitioner's argument that Mr. Puetz should have argued for a downward departure. CR 103-064, doc. no. 126, p. 4. As noted, both Mr. Puetz and the Government argued extensively for a downward departure based on Petitioner's assistance in a successful sting operation against her co-defendants. Sentencing Tr., pp. 33-44. Mr. Puetz pointed out, *inter alia*: 1) Petitioner's cooperation was essential to the aforementioned sting operation against her co-defendants; 2) Petitioner "went through" records at "her department" in an effort to help law enforcement find the "fictitious licenses" she had issued; 3) Petitioner had accepted responsibility for her actions and admitted her guilt; and 4) since her termination from the Department of Motor Vehicles, Petitioner had gone back to school, become a licensed phlebotomist, and secured honest employment. Id. at 37-42. Mr. Puetz

also argued against an upward departure by arguing that the Petitioner's six level enhancement based on the number of fraudulent documents produced sufficiently accounted for Petitioner's financial gain because it was hard to "imagine that someone would be producing [that many documents] for free." Id. at 28. Simply put, there is no reason to suppose that Mr. Puetz's performance at sentencing was deficient in any way. Put plainly, Petitioner's argument that Mr. Puetz was ineffective at sentencing is frivolous and does not merit further discussion.

### B. Remaining Claims

#### 1. Entitlement to Downward Departure

Having addressed Petitioner's ineffective assistance of counsel claims, the Court turns to her substantive attacks on her sentence, which are likewise frivolous. First, Petitioner argues that she was entitled to a downward departure. This contention may also be understood as an implicit argument that Judge Bowen's decision to upwardly depart was error. Neither claim has merit.

First, Petitioner had no entitlement to a downward departure. Rather, the decision to grant or deny the Government's request for downward departure was squarely within Judge Bowen's discretion. Indeed, a criminal defendant may not appeal the district court's refusal to grant a motion for downward departure unless the court erroneously believed it lacked the authority to grant the departure. See United States v. Anderson, 326 F.3d 1319, 1333 (11th Cir. 2003); see also United States v. McVay, No. 04-13455, __ F.3d __, 2006 WL 1193212, at * 5 (11th Cir. May 5, 2006). Judge Bowen was aware of his authority to downwardly depart, but rejected the invitation to do so. In sum, Judge Bowen's refusal to

grant a downward departure is not subject to attack, either in a direct appeal or a § 2255 proceeding. See United States v. Winingear, 422 F.3d 1241, 1245-46 (11th Cir. 2005).

Nor was Judge Bowen's decision to upwardly depart from the Guideline sentencing range under U.S.S.G. § 5K2.0 erroneous. To begin, the Court should note that, absent a miscarriage of justice, an upward departure cannot be challenged in a § 2255 proceeding. United States v. Faubion, 19 F.3d 226, 232-33 (5th Cir. 1994). More generally, alleged errors concerning the Guidelines are not usually cognizable on collateral attack. Montemoino, 68 F.3d at 417. "Because a defendant has the right to directly appeal a sentence pursuant to the Sentencing Guidelines, the defendant is precluded from raising Guidelines issues in collateral proceedings under § 2255." Martin v. United States, 81 F.3d 1083, 1084 (11th Cir. 1996).

That said, even upon direct appeal, the district court's decision to upwardly depart is subject to review only for an abuse of discretion. United States v. Williams, 340 F.3d 1231, 1243 (11th Cir. 2003). The district court may upwardly depart whenever it determines the existence of an aggravating circumstance, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines, which should result in a greater sentence than that called for by the Guidelines. United States v. Melvin 187 F.3d 1316, 1320 (11th Cir. 1999)(quoting 18 U.S.C. § 3553(b)).

Here, Judge Bowen determined that an upward departure was warranted because the applicable Guideline provision (U.S.S.G. § 2L2.1) did not address the financial gains Petitioner derived from her criminal conduct. PSI ¶64; Sentencing Tr., pp. 53-54. On the other hand, U.S.S.G. § 2B1.1(b)(1)(D) calls for a six level increase for fraudulent offenses

resulting in a monetary gain between $30,000 and $70,000. Accordingly, Judge Bowen relied upon U.S.S.G. § 2B1.1 as a basis for a guided upward departure. PSI ¶ 64. Petitioner has outlined no reason to suppose that the departure was not warranted, and the Court is aware of none.

Indeed, the instant case was clearly outside the heartland of the Guidelines. Petitioner provided illegal aliens with driver's licenses for $500 apiece. This is not a scenario contemplated by U.S.S.G. § 2L2.1. That an American citizen would commit such a crime after the tragedy of September 11, 2001 is almost unfathomable--almost, because Petitioner did so repeatedly. As Judge Bowen pointed out at sentencing, the whereabouts and identities of most of the illegal aliens who procured fraudulent licenses from Petitioner have not been ascertained. Thus, the harm Petitioner has done to this Nation remains unknown and can hardly be overestimated. Sentencing Tr., pp. 50-51. Given these facts, Judge Bowen properly turned to an analogous Guideline provision in assessing whether (and how much) to upwardly depart from the Guideline range. Cf. United States v. Guzman, 282 F.3d 177, 181-82 (2d Cir. 2002) (district court properly consulted analogous Guideline provision upon determining that applicable Guideline range did not take in account the seriousness of defendant's actions as a "broker" for illegal aliens seeking to obtain New York driver's licenses). In sum, Petitioner's claims regarding the upward departure lack merit.

### 2. Blakely Challenge

Finally, Petitioner's attempt to challenge her sentence under Blakely is not a cognizable basis for relief under § 2255. Neither Blakely nor the Supreme Court's more

recent decision in <u>Booker v. United States</u>, 543 U.S. 220 (2005), apply retroactively to cases on collateral review.[7] <u>Varela v. United States</u>, 400 F.3d 864, 868 (11th Cir. 2005). In sum, Petitioner's claims lack merit and her § 2255 motion should be denied.

### III. CONCLUSION

For the foregoing reasons, the Court finds that Petitioner is not entitled to relief under § 2255. The Court therefore **REPORTS** and **RECOMMENDS** that the § 2255 motion be **DENIED**, that this civil action be **CLOSED**, and that a **FINAL JUDGMENT** be **ENTERED** in favor of the Government.

SO REPORTED and RECOMMENDED this 26th day of May, 2006, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[7]Petitioner's conviction became final on May 7, 2004, ten days after entry of her sentencing judgment, before the Supreme Court decided <u>Blakely</u> (June 24, 2004) or <u>Booker</u> (January 12, 2005).